http://www.va.gov/vetapp16/Files6/1644955.txt

Citation Nr: 1644955 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 11-00 120A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada

THE ISSUES

1. Entitlement to service connection for uncontrollable urination, to include secondary to lumbar degenerative disc disease, spondylosis or bilateral lower extremity radiculopathy.

2. Entitlement to an increased rating for lumbar degenerative disc disease and spondylosis, currently rated as 20 percent disabling.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

K. Parke, Associate Counsel

INTRODUCTION

The Veteran served on active duty from February 1989 to February 1991.

These matters come before the Board of Veterans' Appeals (Board) from a September 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada. 

In June 2012, the Veteran testified at a videoconference hearing before the undersigned; a transcript of that hearing is of record.

These claims were remanded by the Board in May 2014 for additional adjudicative action. 

The Veteran was awarded entitlement to service connection for bilateral lower extremity radiculopathy, and a total disability evaluation based on individual unemployability due to service connected disorders in an August 2015 rating decision.

This appeal was processed entirely electronically using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems.

The issue of entitlement to service connection for uncontrollable urination, to include secondary to lumbar degenerative disc disease, spondylosis and bilateral lower extremity radiculopathy is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

The Veteran's lumbar degenerative disc disease and spondylosis is not manifested by either thoracolumbar flexion to 30 degrees or less, or by favorable thoracolumbar ankylosis.

CONCLUSION OF LAW

The criteria for a disability rating in excess of 20 percent for lumbar degenerative disc disease and spondylosis have not been met. 38 U.S.C.A. §§ 1155, 5107; 
38 C.F.R. §§ 3.102, 3.321, 4.1, 4.3, 4.7, 4.21, 4.71a, Diagnostic Codes 5003, 5242, and 5243.

REASONS AND BASES FOR FINDING AND CONCLUSION

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107. To deny a claim on its merits, the evidence must preponderate against the claim. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).
 
Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (2015). Lay evidence may be competent and sufficient to establish a diagnosis of a condition when a layperson is competent to identify the medical condition such as a broken leg, the layperson is reporting a contemporaneous medical diagnosis, or lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007).
 
In ascertaining the competency of lay evidence, the Court has generally held that a layperson is not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183 (1997). In certain instances, however, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007).

Increased Disability Ratings

Disability evaluations are intended to compensate for the average impairment of earning capacity resulting from a service-connected disability. They are primarily determined by comparing objective clinical findings with the criteria set forth in the Rating Schedule. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations apply, the higher evaluation will be assigned where the disability picture more nearly approximates the criteria for the next higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

While the Board must consider the Veteran's medical history as required by various provisions under 38 C.F.R., Part 4; see also Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the degree of impairment resulting from a service-connected disability is a factual determination, with the Board's primary focus in such cases being upon the current severity of the service-connected disability. See Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994). 

Consideration must be given to increased evaluations under other potentially applicable Diagnostic Codes. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). Notably, however, when a condition is specifically listed in the Rating Schedule that disorder may not be rated by analogy. Copeland v. McDonald, 27 Vet. App. 333, 336(2015). 

When it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam).

Separate higher or lower compensable evaluations may be assigned for separate periods of time if such distinct periods are shown by the competent evidence of record during the appeal, a practice known as "staged" ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Lumbar Degenerative Disc Disease and Spondylosis

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40.

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 
38 C.F.R. § 4.45.

Under the general rating formula for rating spinal disorders, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, a 40 percent rating is assigned where forward flexion of the thoracolumbar spine is 30 degrees or less; or, where there is favorable ankylosis of the entire thoracolumbar spine. A 20 percent rating is assigned where forward thoracolumbar flexion is greater than 30 degrees but not greater than 60 degrees; or, where the combined range of thoracolumbar motion is not greater than 120 degrees; or where there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a.

Note (1) to the rating formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code. Id.

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. Id.

Note (6): Separately evaluate disability of the thoracolumbar and cervical spine segments, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability. Id.

Under Diagnostic Code 5243, the evaluation of an intervertebral disc syndrome (preoperatively or postoperatively) is to be made on the total duration of incapacitating episodes over the prior 12 months. For incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months, a 20 percent rating is warranted. For incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months, a 40 percent rating is warranted. Id.

Diagnostic Code 5243 defines an incapacitating episode as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Chronic orthopedic and neurologic manifestations means orthopedic and neurologic signs and symptoms resulting from intervertebral disc syndrome that are present constantly, or nearly so. Further when rating on the basis of chronic manifestations, the orthopedic disabilities will be rated under the most appropriate orthopedic diagnostic code or codes and the evaluation of neurologic disabilities will be done separately using the most appropriate neurologic diagnostic code or codes.

Because the Veteran is already in receipt of a 20 percent disability rating the rating schedule requires for a 40 percent evaluation that forward thoracolumbar flexion be 30 degrees or less, or that there be favorable ankylosis of the entire thoracolumbar spine, or evidence of a sufficient number of incapacitating episodes due to an intervertebral disc syndrome.

Lumbar Spine

The Veteran's lumbar degenerative disc disease and spondylosis is evaluated under Diagnostic Code 5237 as 20 percent disabling. The Veteran is separately service-connected for bilateral lower extremity radiculopathy secondary to his service-connected lumbar spine disability. The ratings assigned those disorders is not ripe for appellate review. 38 U.S.C.A. § 7105.

The Veteran has submitted private treatment records from University Medical Center from May and June 2008, showing treatment for acute low back pain. He has also submitted chiropractic records from Decatur & Craig Chiropractic showing that that he was treated there in October 2008 and was told to apply ice to his back and rest. The Veteran has also submitted October 2008 records from Dr. W.O. at the Nevada Imaging Centers. Those records showed a L5-S1 intervertebral disc bulge with annular tear, severe neural foraminal narrowing on the right with moderate neural foraminal narrowing on the left, and multilevel facet arthopathy.

The Veteran was afforded a VA medical examination in October 2008. He reported taking approximately thirty tablets of Motrin a month. He received chiropractic manipulation, used a cold pack, and tried to do home back exercises. The Veteran reported three incapacitating flare-ups that required physician treatment with duration of up to three days, including bed rest. The alleviating factors were sometimes moving around plus bed rest and medication. The Veteran did not use any assistive devices, back braces, or elastic orthoses. There was no history of surgery. The Veteran reported being able to walk a maximum of a quarter mile without stopping, but he described difficulty with prolonged standing for more than twenty minutes. The claimant reported that the maximum he could lift and carry was thirty pounds. The Veteran's ability to kneel, crawl, and squat were also reportedly limited. He claimed that he was able to sit for approximately one hour. 

Physical examination revealed a slightly slow gait, kind of in a guarded manner, with no limp or list. Lower back pain began on forward flexion at 55 degrees with maximum forward flexion to 80 degrees. The Veteran's extension was to 40 degrees, and bilateral lateral flexion and bilateral lateral rotation were to 30 degrees. There was no change in the Veteran's range of motion after repetitive movement. There was palpatory tenderness without significant muscle spasm. There was guarding of the thoracolumbar spine. There were no postural abnormalities or fixed deformities of the thoracolumbar spine. Repetitive movement of the thoracolumbar spine caused no additional functional impairment following repetitive use. The Veteran was diagnosed with chronic low back pain superimposed on degenerative disc disease and spondylosis of the lumbosacral spine with residuals. 

The Veteran submitted private medical records from treatment at Summerlin Medical Center in March 2009 which note care for low back pain. 

The Veteran was afforded another VA medical examination in July 2010. He reported receiving injections in his back for pain management and a nerve ablation on the left side on one of the nerves coming out of the lumbar spine. He reported his back giving out on him a few weeks prior while doing yard work. He also reported a new prescription for oxycodone. He was diagnosed with lumbar spine degenerative disc disease. He reported severe flare-ups every one to two months lasting three to seven days. They were precipitated by doing activities involving motion of the back and were alleviated by medication. During flare-ups the Veteran reportedly stayed on a recliner and did not do anything, as the range of motion of his back was greatly reduced. He had a history of fatigue, stiffness, weakness, spasm, and spine pain. There were incapacitating episodes of spine disease; however, the Veteran reported that he is always on a recliner so it had been years since his doctor put him on bed rest. He reportedly was only able to walk one hundred yards. 

Physical examination revealed that he had normal posture. His gait was antalgic and slow. There was no ankylosis. There was spasm, guarding, pain with motion, and tenderness. There was no weakness or atrophy. The Veteran's flexion was to 90 degrees, extension to 0 degrees, left and right lateral flexion to 30 degrees, and left and right lateral rotation to 30 degrees. There was objective evidence of pain on active range of motion. There were no additional limitations after three repetitions of range of motion. X-rays show slight narrowing of L5-S1 disc. 

The Veteran submitted a July 2012 private treatment record from Dr. E.P. of the Advanced Spine and Pain Center. The Veteran was diagnosed with a herniated nucleus pulposus of the lumbar spine. There was also advanced degenerative disc disease, disc dehydration, and disc space narrowing. At L3-L4 there is a disc bulge perhaps mild canal stenosis and a disc bulge at L4-L5. At L5-S1, there is a small broad-based disc herniation slightly indents the anterior thecal sac more so on the right side, which contributes to moderate narrowing of the right neural foramen. There could be some mild impingement on the exiting right L5 nerve root. There are no discrete pars defect and no spondylolisthesis. 

The Veteran was afforded another VA medical examination in September 2012. He was diagnosed with degenerative disc disease and spondylosis of the lumbar spine. The Veteran reported flare-ups where he could not do anything. Flexion was to 60 degrees, extension was to 10 degrees, right lateral flexion was to 15 degrees, left lateral flexion was to 25 degrees, and bilateral rotation was to 20 degrees. There was objective evidence of pain at the end of the ranges of motion. After repetitive use testing with three repetitions, the Veteran's flexion was limited to 50 degrees. None of the Veteran's other ranges of motion were limited after three repetitions. The Veteran had less movement than normal, incoordination, impaired ability to execute skill movements smoothly, and pain on movement. There was localized tenderness or pain to palpation for joints and/or soft tissue of the thoracolumbar spine in the right paralumbar area. There was guarding or muscle spasm resulting in an abnormal gait. The Veteran had normal muscle strength and no muscle atrophy. There was no intervertebral disc syndrome, and the Veteran did not use assistive devices. 

The Veteran was afforded another VA medical examination in July 2015. He was diagnosed with degenerative arthritis of the spine. He did not report flare-ups. He said that he was not able to bend forward or twist because of his back pain. His flexion was to 40 degrees, extension to 15 degrees, right and lateral flexion to 25 degrees, right and lateral rotation to 30 degrees. There was pain noted on examination, which caused functional loss. There was pain on forward flexion. There was no additional loss of function or range of motion after three repetitions. There was no guarding or muscle spasm. The Veteran had normal muscle strength and no muscle atrophy. There was no ankylosis and no intervertebral disc syndrome. The Veteran did not use assistive devices. There was documented arthritis. 

While the Veteran's private treatment records and VA medical examinations show painful limitation of motion, they do not show any ankylosis or intervertebral disc syndrome. 

For the Veteran to receive a higher disability rating under the general rating schedule, he must demonstrate thoracolumbar ankylosis or forward thoracolumbar flexion to 30 degrees or less. The Veteran's range of motion measurements during the appellate period show that forward flexion was only limited to no less than 40 degrees, and ankylosis was never shown. After careful consideration of all the lay and medical evidence of record, the Board finds that the evidence of record fully considers the functional impairment caused by this disability. Considering functional impairment, the evidence shows that the Veteran retains forward lumbar flexion greater than 30 degrees, and there is no evidence of ankylosis. Therefore, the Veteran is not entitled to a higher disability rating under the general rating schedule.

Under Diagnostic Code 5243, the Veteran is not entitled to a compensable rating for intervertebral disc syndrome because he has not reported and his treatment records do not reflect an intervertebral disc syndrome. 

The preponderance of the evidence is against the Veteran's claim for an increased disability rating for lumbar degenerative disc disease and spondylosis and the doctrine of reasonable doubt is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

In reaching this conclusion, the Board has considered the requirements of 38 C.F.R. §§ 4.40, 4.45, 4.59; Mitchell v. Shinseki, 25 Vet. App. 32 (2011); DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995). To the extent that the Veteran reported lumbar pain during this time, the Board finds that the current rating contemplate periarticular pathology productive of painful motion. 38 C.F.R. § 4.59; see also 38 C.F.R. § 4.71a (Disabilities of the spine, such as degenerative joint disease, are to be rated pursuant to the general rating formula for diseases and injuries of the spine, and those criteria are controlling regardless whether there are symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease).

Extraschedular Consideration

The Board has considered whether referral for an extraschedular evaluation is warranted for the Veteran's lumbar disorder. In this regard, the law provides that in exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2015). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. 

Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321 (b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). 

When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating.

Turning to the first step of the extraschedular analysis, the symptomatology and impairment caused by the Veteran's disability are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The Board notes that pain and other orthopedic factors, such as fatigability are part of the rating criteria used to evaluate this disorder. See 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a; see also DeLuca.

In the absence of exceptional factors associated with his disability, the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321 (b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

ORDER

Entitlement to a disability rating in excess of 20 percent for lumbar degenerative disc disease and spondylosis is denied.

REMAND

Since the Veteran's last VA medical examination, he was service-connected for radiculopathy of the bilateral lower extremities. The Veteran claims that he suffers from uncontrolled urination in connection with his severe back pain and/or radiculopathy. A VA medical examination to determine whether any urinary disorder, to include incontinence, is related to bilateral lower extremity radiculopathy would assist in adjudicating the Veteran's claims.
 
Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA compensation examination with a specialist in neurological disorders to determine the current nature and likely etiology of any diagnosed urinary disorder. The claims folder must be made available to the examiner in conjunction with the examination. The report must indicate whether the claims file, including a complete copy of this remand, was reviewed. Based on the examination and review of the record, the examiner is asked to opine whether it is at least as likely as not that any diagnosed urinary disorder is related to the Veteran's service-connected lumbar degenerative disc disease and spondylosis and/or bilateral lower extremity radiculopathy.

It is essential the examiner discuss the underlying rationale of any opinion offered, whether favorable or unfavorable, and cite to specific evidence in the file which supports the conclusions offered. If an opinion cannot be offered without resorting to mere speculation, the examiner should so state, but even more importantly provide discuss of why a more definitive response is not possible or feasible.

2. Then, after completing any other necessary development, readjudicate this claim in light of this and all other additional evidence. If this claim continues to be denied, send the Veteran and his representative a supplemental statement of the case and give them time to respond to it before returning the file to the Board for further appellate consideration of this claim.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112.

____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs